JOURNAL ENTRY AND OPINION
Defendant-appellant Chez A. Hawkins (d.o.b. June 29, 1974) appeals from his jury trial conviction of one count of Felonious Assault [R.C. 2903.11] with firearm specifications.[1] For the reasons adduced below, we affirm.
A review of the record on appeal indicates that the date of the offense was Friday, November 7, 1997, at which time the victim, Mr. Quinn Mitchell, was struck in the head with the butt of a TEC-9 semi-automatic 9mm pistol causing a hematoma and avulsion laceration to the left ear which required numerous sutures to repair the wound.
Appellant and his co-defendant, Darnell Eatmon ("Eatmon"), were tried jointly. At the trial, the prosecution's case consisted of five witnesses.
The first witness for the prosecution was the victim. He testified that on the date of the offense, at approximately 9:00 p.m., he went to a store located at Shaw and St. Clair Avenues to buy some beer. He was unarmed. Within the store the victim saw the appellant, a person who was previously known to the victim, and the two exchanged some words. The appellant left the store. A short time later, having purchased some beer, the victim then left the store and put the purchases into his car which was parked just outside the front door of the store. At that point, in the parking lot of the store, the appellant and the victim again exchanged words and began to engage in a fist fight with one another. At some point, the appellant's friend, co-defendant Eatmon, who was not known by the victim, came on the scene and struck the victim on the left side of the head with the previously identified firearm, which the victim described in detail. (R. 46-47.) The victim fell toward the wall of the store and then grabbed the ammunition clip on the firearm because Eatmon had threatened to shoot the victim. At that point, appellant came up behind the victim and began to strike the victim in the face. The victim claimed that it was then, while the victim was dazed, that the appellant reached into the victim's pocket and took $156. The victim then let go of the firearm and ran toward the door of the store, which was now locked. The victim then ran behind the store, waited for a few minutes, and then returned to the front of the store where he discovered that his assailants had left. The victim claimed that appellant had been riding in a white-colored car that evening which was driven by Mr. Miguel Jones. Following the attack, the victim was treated at a local hospital.
The second witness for the prosecution was Cleveland Police Patrolman Timothy Longfellow. This witness, with the assistance of his partner, Patrolman Jones, arrested appellant and Eatmon on December 13, 1997, after the fugitives were detained in East Cleveland on a warrant relating to the offenses in this case. The witness transported the pair to the Sixth District station house.
The third witness for the prosecution was the victim's sister, Ms. Turkessa Mitchell. She testified that she was at the parking lot of the store in a car at the time of the offenses herein. She was intending to meet her brother there and never went inside the store. The victim did not know of her presence until after the fight. She observed the fight in the parking lot involving her brother. She corroborated her brother's testimony that Eatmon, from behind the victim, hit the brother's head. She also observed the appellant strike her brother as the brother was against the wall, and the appellant then reach into the brother's pocket before running off. She did not get out of the car and come to her brother's assistance because she was afraid that Eatmon, whom she had known since elementary school, may use the firearm against her. It was she who identified Eatmon to her brother as the individual who had struck him with the firearm. She also admitted to having spoken with the appellant in the past, no later than 1990, and claimed to never having dated or having had sexual relations with the appellant. She observed the appellant, after the fight, leave the scene in a white Honda automobile. She observed Eatmon leave the scene in a van. Without her brother's knowledge, she followed her brother to the hospital after the fight, meeting him at the hospital.
The fourth witness for the prosecution was Cleveland Police Detective Joseph Williams. This witness testified to having investigated the offenses at issue. The victim contacted this witness a short time after the date of the offense. Pursuant to this contact, the victim came to the station house on November 12, 1997, and gave a statement to the detective. Ms. Mitchell also gave an oral statement to the witness. Based on the information provided by the victim and his sister, the witness caused a warrant to be issued for the arrest of the two assailants. During an interview with Eatmon, Eatmon claimed that he was innocent and could not have been at the store at the time of the offenses because he claimed he was in the hospital being treated for a gun shot wound at that time; subsequent investigation by the witness revealed that Eatmon had been treated for a gun shot wound, not on the date of the offenses herein, but on October 16, 1997 (approximately three weeks prior to the offenses at issue)
The fifth, and final, witness for the prosecution was Ms. Shauti Dickson. This witness, who was driving the car in which the victim's sister was riding at the time of the offenses herein, corroborated the testimony of the victim's sister relative to what was observed in the parking lot at the store that evening.
The court then denied motions for acquittal presented by appellant and the co-defendant.
Appellant next offered the testimony of Mr. James Anderson. This witness stated that he knows the appellant as a friend of his son. Mr. Anderson, a retiree from Chrysler Corporation, further stated that he drove up to the store at issue with his daughter to get some ice cream. Arriving in the parking lot, he observed appellant leaving the store being followed by another man (the victim). The two men were arguing. The witness then went into the store to make his purchase. As he came out of the store the witness observed appellant and the victim fighting in the parking lot. The witness next observed some of the non-combatants in the area separate the two fighters and place the appellant into a white car which drove away as the victim went around to the rear of the building. The witness, who did not personally break up the fight, saw no firearms displayed and did not see any physical injuries to, or blood on, the victim. On cross-examination by the prosecutor, the witness testified to the offense happening on a warm, dry, summer night. (R. 238.)
The second witness for the appellant was Mr. Lashone Teachey. This witness claimed to be present with the appellant at the store and corroborated the version of events related by the previous witness, Mr. Anderson. The witness added that the victim provoked the fight. The witness also stated that it was he who put the appellant into Miguel Jones' white Honda automobile prior to he, appellant and Jones leaving the scene. The witness observed no firearms that evening and claimed to not seeing Eatmon, the co-defendant, at the scene. The witness never spoke with the police following the offenses that night.
The third, and final, witness for the appellant was Mr. Miguel Jones, who generally corroborated the testimony of the prior witness, Mr. Teachey. The witness claimed that he had gone to the store accompanied by the appellant and "Demetrius." The witness never left his car, saw no firearms displayed, observed Mr. Anderson personally break up the fight, remembered no physical injuries on the victim, and did not see Eatmon at the scene that evening. Curiously, the witness recalled that the victim came out of the store first, followed by the appellant. (R. 259.)
The first witness for co-defendant Eatmon was Ms. Angela Ferguson, who is the girlfriend of Eatmon. Eatmon is the father of the child she was expecting at the time of testifying. This witness testified that Eatmon was treated and released in mid-October of 1997 for a gun shot wound. She claimed that she and Eatmon spent weekends together so he could not have been at the scene of the offenses herein. She was aware that Eatmon had been arrested for the crimes, but she never informed the police that Eatmon was with her at the time of the offenses.
Eatmon then testified on his own behalf. He recounted the episode of being shot on October 16, 1997. He claimed to be at home with Ms. Ferguson at the time of the offenses. He denied telling the detective the exact date of when he was shot; instead, he told the detective that he was shot "recently." (R. 280.)
The court then instructed the jury relative to the offenses and complicity. The jury returned its verdict against the appellant, and the same conviction for felonious assault with firearm specifications against co-defendant Eatmon.[2] Subsequent to the preparation of a presentence investigation report, the court sentenced appellant to a term of seven years on the felonious assault conviction in addition to three years actual on the firearm specification.
This appeal presents three assignments of error.
 I THE EVIDENCE WAS CONSTITUTIONALLY INSUFFICIENT TO SUSTAIN A CONVICTION FOR FELONIOUS ASSAULT.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The weight and credibility of the evidence are left to the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. See also State v. Thompkins
(1997), 78 Ohio St.3d 380.
The offense of Felonious Assault is defined in R.C. 2903.11:
(A) No person shall knowingly:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
 (B) Whoever violates this section is guilty of felonious assault, a felony of the second degree. If the victim of the offense is a peace officer, as defined in section 2935.01 of the Revised Code, felonious assault is a felony of the first degree.
In the case sub judice, the evidence, viewed in a light most favorable to the prosecution, indicated that Eatmon came up behind the victim and struck the victim on the head with the firearm and, as the victim was dazed and fallen against the wall of the store, the appellant pounced upon the victim and began to punch the victim in the face. This action by the appellant in punching the victim almost immediately after Eatmon had perpetrated his attack demonstrates appellant's assistance in the attack by Eatmon. Appellant's complicity in the felonious assault by Eatmon was sufficiently supported by the evidence.
The first assignment of error is overruled.
 II IMPROPER BIAS BY THE TRIAL COURT AGAINST THE APPELLANT VIOLATED THE APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL trial AND DUE PROCESS OF LAW.
In this assignment, appellant argues that because the trial court did not overrule any objection raised by the prosecution, and did overrule all the defense objections (by both defendants' counsel), that this demonstrates a bias by the trial court which prevented a fair trial. This argument is without merit.
The cold statistical tally of the trial court's rulings on objections is not, in and of itself, an indicia of bias. There is no authority, as appellant seems to suggest be done, that mandates a court to parse out favorable rulings on objections equally to both sides in a case, first to one side and then to the other ad infinitum in order to deflect the hint of bias toward one party.
We have reviewed the record of the trial relative to the rulings which appellant claims establish bias by the trial court. We find no error in the court's evidentiary rulings or evidence of bias. The adverse rulings to the defense limited cumulative testimony, improperly phrased questions, improper questions, irrelevant testimony, questions or comments on facts which were not in evidence, or questions which called for a speculative answer. We also note that the trial court instructed the jury to raise no inference, or otherwise speculate, on the court's rulings on objections. (R. 374.)
The second assignment of error is overruled.
 III THE RECORD DOES NOT SUPPORT A SENTENCE OF SEVEN YEARS PLUS THREE, AS THE EVIDENCE DOES NOT ESTABLISH THAT THIS OFFENSE IS OF A MORE SERIOUS NATURE THAN CONDUCT NORMALLY CONSTITUTING THE OFFENSE OF FELONIOUS ASSAULT.
The seven-year term of imprisonment imposed by the trial court is one year less than the maximum available term permitted by law for the second degree felony of which appellant was convicted. See R.C. 2929.14. Appellant argues that the record does not support "a near maximum sentence for this offender." Appellant's brief at 20. In particular, appellant argues that the sentence was not consistent with the sentencing factors enumerated in R.C.2929.12.
In analyzing this assignment, we note that an appellate court can only reverse or modify a sentence if the appellate court clearly and convincingly finds that the record does not support the sentence, or that the sentence is contrary to law. R.C.2953.08(G). In carrying out this review, we look to whether the trial court considered the factors relating to seriousness of the conduct and recidivism set forth in R.C. 2929.12, along with the other factors relevant to achieving the purposes of sentencing. See R.C. 2929.12(A). Our review is tempered by noting that the trial court has broad discretion in determining the most effective way to uphold the objectives of sentencing. We also note that the underlying purpose of sentencing is to protect the public from future crime and punish the offender. R.C. 2929.11.
The record, in establishing that the appellant's conduct is "more serious than conduct normally constituting the offense," indicates that the "victim of the offense suffered serious physical harm as a result of the offense." See R.C.2929.12(B)(2). The appellant, in striking the victim in the head immediately after the victim received the blow from the firearm and being in a dazed state, aided the actions of Eatmon in causing a severe laceration to the victim's ear.
The record, relative to whether the "offender's conduct is less serious than conduct normally constituting the offense," contains no evidence which would demonstrate any of the factors contained in R.C. 2929.12(C)(1)-(4). It cannot be said that the victim induced the appellant to strike him about the head as he fell against the wall following the blow from the firearm, or that the victim facilitated the blow from the firearm or the blows from the appellant subsequent to the blow from the firearm. See R.C.2929.12(C)(1). The record does not demonstrate that the attackers acted under strong provocation in striking the victim with the firearm or appellant's fist following the blow from the firearm. See R.C. 2929.12(C)(2). In committing the offense, the offender caused physical harm to the victim. See R.C. 2929.12(C)(3). Finally, there exist no substantial grounds which would mitigate the offender's conduct. See R.C. 2929.12(C)(4).
With respect to whether the offender was a risk to commit future crime, the record reflects that the trial court was aware that at the time of the offense the appellant was under probation to the court for another offense and had a history of prior criminal convictions (both as a juvenile and as an adult) which were detailed at length by the court at sentencing. (R. 430-432); see R.C. 2929.12(D)(1) and (2), (E)(2) and (3). The appellant demonstrated "no genuine remorse for the offense"; instead, the appellant maintained generally that he did not cause the offense and did not hurt the victim. (R. 427); see R.C. 2929.12(D)(5), and (E)(5).
We conclude that the court sufficiently complied with the relevant law at the time of sentencing and that the seven-year term of imprisonment is supported by the record.
The third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J., and LEO M. SPELLACY, J., CONCUR.
 __________________________________ JAMES D. SWEENEY JUDGE
[1] Appellant was acquitted on one count of Aggravated Robbery [R.C. 2911.01] with firearm specifications, and one count of Having a Weapon While Under a Disability [R.C. 2923.13].
[2] Eatmon was charged with the same offenses as was appellant with the exception of the offense of having a weapon while under a disability.